COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Benton and Kelsey
Argued at Richmond, Virginia


ROBERT MICHAEL BABER

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 2832-01-2    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                         APRIL 8, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                 David F. Berry, Judge Designate

         Norman Lamson for appellant.

         Amy L. Marshall, Assistant Attorney General
         (Jerry W. Kilgore, Attorney General, on
         brief), for appellee.


     The trial judge convicted Robert Michael Baber of grand

larceny. Baber contends his conviction must be reversed because

the trial judge erred by admitting hearsay evidence. We hold that

the judge erred by admitting the evidence but that the error was

harmless.

                              I.

     The evidence proved that Robert Michael Baber purchased a

toolbox in a Sears department store on the evening of January 12,

2001. Chad Bush, a sales employee in the hardware area, testified

that he gave Baber a receipt for the toolbox and put a piece of

"Sears tape" on the toolbox to indicate it had been purchased. He

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

also testified that he did not sell Baber a generator or any item other than the toolbox. When asked whether he sold a generator that day, Bush testified, "[n]ot that I recall." He further testified that Baber was with another man when he sold him the toolbox.

Ricky Thompson, another sales employee, saw Baber in the hardware area and later saw him walking out of the store next to a man who was pushing a cart. Thompson noticed that a "Companion" generator, model "5250," was in the cart. He stopped the men outside of the store entrance and asked if they had a receipt for the generator. Thompson testified Baber replied that his wife had the receipt and that she was somewhere in the mall. He said one of the two men then pointed to the generator and "said there's a receipt right there," referring to a receipt that was attached to the generator with a piece of tape. Thompson inspected the receipt, noticed it was not for the generator, which was valued at $629.99, and told the men the receipt was for a $9.99 toolbox. Baber told Thompson the employee who sold him the toolbox also sold him the generator. Recognizing the identification number of the sales employee on the receipt, Thompson said he could check with the employee. Baber and the other man walked away with the generator in the cart.

Thompson conferred with Kenneth Kirby, the assistant manager, who was close by. Kirby testified he had observed Thompson and the men from a distance and noticed the generator, which was out

-

of its box and was marked "Companion 5250Y."  When Kirby learned that the receipt was not for the generator, he and Thompson went to speak with Bush, the employee whose identification number was on the sales receipt.  Kirby also asked other sales employees whether they had sold a generator within the last hour.  He and Thompson then entered the generator's "part number" into a computer that is connected to all cash registers in the store.  Over Baber's hearsay objection, Kirby and Thompson testified that the computer screen showed that no generators had been sold that day.  Kirby also testified that the computer system was never known to be inaccurate.  Neither Kirby nor Thompson caused the computer to print the information displayed on the computer screen.

Kirby testified that he then went to the parking lot where he saw Baber walking next to a man who was pushing the cart.  When he reached them, Baber and the man were loading the generator in the trunk of a car.  Kirby noticed other people around the car, including a woman who was later identified as Baber's wife.  When Kirby asked Baber for a receipt, Baber cursed and told him his employee had the receipt.  Kirby returned to the store and called the police.  The evidence also proved that several days later, Bush found a toolbox "down by the generators."

At the conclusion of the evidence, the judge convicted Baber of grand larceny.

-

II.

Baber contends the trial judge erred when he admitted into evidence the testimony of Thompson and Kirby concerning the information displayed on the computer screen. He argues that the testimony about the information was hearsay, that the business records exception is not applicable because the Commonwealth did not enter into evidence the printed information displayed on the computer screen, and that the testimony involves an "absence of a business record," which is an exception to the hearsay rule that Virginia has not yet recognized. The Commonwealth asserts that the issue is moot, the evidence was not hearsay, and the evidence was admissible as a business record exception to the hearsay rule.

A.

"Hearsay evidence is defined as a spoken or written out-of-court declaration or nonverbal assertion offered in court to prove the truth of the matter asserted therein." Arnold v. Commonwealth, 4 Va. App. 275, 279-80, 356 S.E.2d 847, 850 (1987). The rule is well established "that hearsay evidence is inadmissible unless it falls within one of the recognized exceptions to the hearsay rule and that the party attempting to introduce a hearsay statement has the burden of showing the statement falls within one of the exceptions." Robinson v. Commonwealth, 258 Va. 3, 6, 516 S.E.2d 475, 476-77 (1999) (citations omitted).

-

The Supreme Court has addressed the matter of computer records and hearsay.

> In determining the admissibility of computer records, when the argument has been advanced that they are inadmissible hearsay, we have employed the traditional business records exception to the hearsay rule.
>
> "Under the modern Shopbook Rule, adopted in Virginia, verified regular entries may be admitted into evidence without requiring proof from the regular observers or record keepers," generally limiting admission of such evidence to "facts or events within the personal knowledge of the recorder." However, this principle does not necessarily exclude all entries made by persons without personal knowledge of the facts recorded; in many cases, practical necessity requires the admission of written factual evidence that has a circumstantial guarantee of trustworthiness.
>
> "The trustworthiness or reliability of the records is guaranteed by the regularity of their preparation and the fact that the records are relied upon in the transaction of business by the person or entities for which they are kept." "Admission of such evidence is conditioned, therefore, on proof that the document comes from the proper custodian and that it is a record kept in the ordinary course of business made contemporaneously with the event by persons having the duty to keep a true record."

Kettler & Scott, Inc. v. Earth Tech. Cos., Inc., 248 Va. 450, 457, 449 S.E.2d 782, 785-86 (1994) (citations omitted and emphasis added).

### B.

Thompson and Kirby testified that they read the computer display and learned from it that no generators had been sold.

-

The Commonwealth contends Tatum v. Commonwealth, 17 Va. App. 585, 440 S.E.2d 133 (1994), and Penny v. Commonwealth, 6 Va. App. 494, 370 S.E.2d 314 (1988), hold that this testimony is not hearsay.  The Commonwealth asserts that, as in those cases, neither witness' testimony concerned an "out-of-court declarant's veracity or perceptions."  We disagree.

In Tatum, we specifically held that, "[i]n this case, there is no 'out-of-court asserter,' because the caller ID display is based on computer generated information and not simply the repetition of prior recorded human input or observation."  17 Va. App. at 588, 440 S.E.2d at 135.  Likewise, in Penny, we noted that the telephone "call trap" generated a number that was not based on any data entered by a human.  6 Va. App. at 498, 370 S.E.2d at 317.  The evidence in this case proved, however, that the information displayed on the computer screen was in part a function of data entered into the system by various sales associates.  Thus, we hold that the testimony of both witnesses was merely a recitation of information shown by the computer's display of inventory data, which was based on input by various individuals.  This evidence constitutes hearsay unless within a recognized exception.

## C.

The Commonwealth contends that the testimony of the witnesses established that the computerized inventory is a record prepared and relied upon in the regular course of

-

business.  The Commonwealth correctly notes that the Supreme Court has held that computer records, when properly proved, may be admissible under the business records exception.  See Kettler & Scott, 248 Va. at 457, 449 S.E.2d at 785-86.

In the present case, however, the Commonwealth did not produce either a printout of the computer screen data or an actual record.  Instead, Thompson and Kirby merely recited the information they said they observed on the computer screen. Relying on Lee v. Commonwealth, 28 Va. App. 571, 507 S.E.2d 629 (1998), the Commonwealth argues that we approved this method of proof when we held that "[a] person who can verify that the business records are authentic can present the evidence by testifying about what he saw displayed or by presenting a printed copy of the display.  Either form is admissible as a business records exception to the hearsay rule."  Id. at 577, 507 S.E.2d at 632 (emphasis added).

We are constrained, however, to follow the Supreme Court's more recent decision in Decipher, Inc. v. iTribe, Inc., 262 Va. 588, 533 S.E.2d 718 (2001), which is contrary to Lee. Discussing the business records exception to the hearsay rule, the Court held that "[g]enerally, the hearsay rule precludes a witness from quoting from, or summarizing the contents of, even admissible records until they have been received in evidence." Id. at 595, 533 S.E.2d at 722.  This holding is consistent with the Court's holding in Kettler & Scott that conditions

-

"admission of written factual evidence that has a circumstantial guarantee of trustworthiness" upon "proof that the document comes from the proper custodian and that it is a record kept in the ordinary course of business." 248 Va. at 457, 449 S.E.2d at 785-86 (emphasis added). In short, business records are admitted as an exception to the hearsay rule because they are regularly prepared and have a guarantee of trustworthiness and reliability. Id. at 457, 449 S.E.2d at 786.

The evidence proved that the computerized inventory tracking system can produce a printed document. Here, however, the Commonwealth sought to rely upon the memory of both witnesses to deliver the content of the records. The evidence does not establish that the trustworthiness and reliability of the evidence can be guaranteed through a recitation of the witnesses' observation of the displayed data. Therefore, we hold that the trial judge erred when he did not sustain Baber's hearsay objections.

Because we hold the trial judge erred in admitting the hearsay evidence, we need not decide Baber's further contention that Virginia law does not recognize an "absence of business entries exception" to the hearsay rule.

D.

The Commonwealth also contends the hearsay issue is moot because the trial judge "never used the challenged evidence to convict [Baber]." We disagree.

-

In ruling the evidence admissible, the trial judge necessarily found it was relevant.  See Ward v. Commonwealth, 264 Va. 648, 654, 570 S.E.2d 827, 831 (2002).  Furthermore, the trial judge's comment that the computer information was "material" and "add[ed] something to corroborate" negates the Commonwealth's suggestion that the issue is moot.

III.

The Commonwealth contends that even if the trial judge erred, the conviction nevertheless should be affirmed because the error was harmless.  We agree.

The test for non-constitutional harmless error is as follows:

> "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand. . . .  But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . .  If so, or if one is left on grave doubt, the conviction cannot stand."

Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (citation ommitted).  An error is harmless if "other evidence of guilt is 'so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict.'"  McLean v. Commonwealth, 32 Va. App. 200, 211, 527 S.E.2d 443, 448 (2000) (citation omitted).

-

Even without the computer information, the evidence proved larceny.  Bush gave Baber a receipt for the purchase of the toolbox and placed Sears tape on the toolbox as proof of payment.  Later, when Thompson saw Baber and another man leaving the store with the generator and asked for the receipt, neither man had the receipt for the generator.  Attached to the generator was the Sears tape and a receipt for a toolbox.  No evidence proved the men then had the toolbox.  Days later, Bush found a toolbox sitting near the generators.

Baber's guilt is further established by the inconsistencies in his statements.  When Thompson asked for a receipt, Baber said his wife had the receipt.  Later, when Kirby asked for the receipt in the presence of Baber's wife, Baber said a Sears employee had it.  Finally, although Baber told Thompson that he bought the generator from the same person who sold him the toolbox, Bush testified he sold Baber the toolbox but never sold Baber a generator.  Based on the evidence, and absent any exculpatory evidence, the trial judge was free to conclude Baber was lying about these events.  See Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).  Indeed, the trial judge specifically noted that he considered Baber's actions to be "a deliberate and very ingenious method of misleading."  The trial judge explained that his decision relied on the "misleading receipt, an inapplicable receipt . . .

-

wrongly placed on the wrong goods.  That couldn't have gotten there any other way."

Nothing indicates that the computer evidence significantly influenced the trial judge's decision.  "[W]e can say, 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole,' that it plainly appears that [Baber] has had a fair trial and the verdict and judgment were not substantially affected by . . . [the error]."  Clay, 262 Va. at 261, 546 S.E.2d at 732.  Thus, the error was harmless.

Accordingly, we affirm the conviction.

Affirmed.

Benton, J., concurring, in part, and dissenting, in part.

I concur in Parts I and II of the majority opinion. Because I would hold that the error was not harmless, I dissent from Part III.

The Supreme Court of Virginia has "adopt[ed] the Kotteakos [v. United States, 328 U.S. 750 (1946),] harmless-error test" for measuring error under Code § 8.01-678. Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 732 (2001). Applying that test, the United States Supreme Court recently held that "the principle of Kotteakos [means] that when an error's natural effect is to prejudice substantial rights and the court is in grave doubt about the harmlessness of that error, the error must be treated as if it had a 'substantial and injurious effect' on the verdict." O'Neal v. McAninch, 513 U.S. 432, 444 (1995) (citing Kotteakos, 328 U.S. at 764-65, 776). Moreover, when a trial error has been shown on direct appeal from a conviction, the government bears the burden of proving harmlessness under this standard. See O'Neal, 513 U.S. at 437. Indeed, the Supreme Court of Virginia has held that "error will be presumed to be prejudicial unless it plainly appears that it could not have affected the result." Caldwell v. Commonwealth, 221 Va. 291, 296, 269 S.E.2d 811, 814 (1980).

It is important to note, as the United States Supreme Court has observed, that an "emphasis and perhaps overemphasis, upon the [concept] of 'overwhelming evidence,'" has the effect of

-

clouding the relevant question "'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" Chapman v. California, 386 U.S. 18, 23 (1967) (footnote and citations omitted). Indeed, the principle is well established that a harmless error analysis is entirely distinct from a sufficiency of the evidence analysis. "The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." Kotteakos, 328 U.S. at 765. Consistent with these principles, the Supreme Court of Virginia has held that even if "the other evidence amply supports the . . . verdicts, [error is not harmless when] the disputed [evidence] may well have affected the . . . decision." Cartera v. Commonwealth, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978). See also Hooker v. Commonwealth, 14 Va. App. 454, 458, 418 S.E.2d 343, 345 (1992) (holding that "a harmless error analysis . . . [is not] simply a sufficiency of the evidence analysis").

The evidence in this case established that any sales employee in the store had the authority to sell any item in the store. The Commonwealth sought to exclude the possibility that another sales employee sold Baber the generator by proving through the computerized inventory system no generators were sold. When admitting the evidence in the record, the trial

-

judge noted that the witnesses' testimony about the computer display was "material" and "verifies the fact that there was no receipt according to the computer." Furthermore, in announcing his decision, the trial judge expressly noted that the computer information was "just adding something to corroborate" the Commonwealth's evidence. The judge's comment that the evidence was "not essential" does not render it harmless.

Although other evidence in the record might support the verdict, "[o]ther evidence of a disputed fact, standing alone, does not establish that an error is harmless." Hooker, 14 Va. App. at 458, 418 S.E.2d at 345. "'[A] fair trial on the merits and substantial justice' are not achieved if an error at trial has affected the verdict." Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (quoting Code § 8.01-678). The Commonwealth bore the burden of proving Baber did not purchase the generator. A significant aspect of that proof was reliance on evidence that none of the sales employees of the store sold the generator. The Commonwealth used the testimony of Kirby and Thompson to establish that Sears' computerized records indicated no generator sales had occurred. Because this proof was offered to establish a fact not otherwise proved, it is "highly probable that the error had substantial and injurious effect or influence in determining the . . . verdict." Kotteakos, 328 U.S. at 776.

For these reasons, I would hold that the error was not harmless, and I would reverse the conviction and remand for a new trial.