COURT OF APPEALS OF VIRGINIA


Present: Judges Frank, Petty and Senior Judge Willis
Argued at Richmond, Virginia


BRENDA S. NEOFOTIS

v.      Record No. 1579-05-3

COMMONWEALTH OF VIRGINIA                    MEMORANDUM OPINION* BY
                                              JUDGE WILLIAM G. PETTY
NICKY NEOFOTIS                                  AUGUST 29, 2006

v.      Record No. 1580-05-3

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
John J. McGrath, Jr., Judge

John S. West (William H. Hurd; Christopher B. Ashby; Troutman
Sanders, LLP, on briefs), for appellants.

Susan M. Harris, Assistant Attorney General, (Robert F.
McDonnell, Attorney General, on briefs), for appellee.


        Appellants Nicky and Brenda Neofotis appeal their convictions following a bench trial

for two counts of embezzlement. They contend the trial court erred by admitting into evidence

certain bank records over their objections because the Commonwealth failed to satisfy the

requirements of the business records exception to the hearsay rule. They also assert that the

evidence submitted at trial was legally insufficient to prove the requisite intent necessary to

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

commit embezzlement. Joining the two appeals for resolution by this Court, we affirm the respective convictions.[1]

## I. BACKGROUND

On appeal, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). So viewed, the evidence establishes that in late 2001, the Neofotises formed NCM Enterprises, L.L.C. ("NCM"), a Virginia limited liability company. They remained the sole members of NCM, and NCM owned and operated the Highlawn Pavilion Restaurant in Harrisonburg, Virginia.[2] The restaurant opened for business in January 2002.

Beginning in February 2002 and continuing through April 2004, the Neofotises collected state sales taxes and local meals taxes in connection with the sale of food and beverages at the restaurant. The Neofotises were required to file tax returns and remit collected taxes to the Department of Taxation ("the Department") for sales tax and to the City of Harrisonburg ("the City") for meals tax. Although these taxes were collected and deposited into NCM's bank account, NCM did not remit the tax revenues as required.

The Commonwealth introduced bank records at trial reflecting activity in NCM's bank account from February 28, 2003, through February 29, 2004. According to the bank statements, the balance in the business' account on February 28, 2003 was negative $502.45; the balance on

---

[1] As Nicky and Brenda Neofotis were represented by the same counsel on appeal and submitted identical opening briefs and identical reply briefs, we address their arguments jointly in this opinion.

[2] The Neofotises listed Highlawn Pavilion as the "Trading-As" Name of the Business on the Form R-1, Virginia Department of Taxation Business Registration Application.

February 29, 2004 was negative $3,470.01.  The bank records also demonstrated that a portion of the credit card charges to the account were personal rather than business related.

Sales Tax

The Neofotises filed one sales tax return and remitted the collected sales tax for the first month of the business' operations.  After that, they ceased filing returns or remitting the sales tax collected.  As a result, twenty-seven delinquency notices were sent to Brenda Neofotis informing her that state sales taxes were due for the restaurant, had not been paid, and were delinquent.

In early 2004, the Department required the Neofotises to attend a hearing because of their delinquent taxes.  As a result of the hearing, the Neofotises filed state sales tax returns for NCM, covering the time period of January 2002 through February 2004, indicating an unpaid tax liability of approximately $60,000.  Pursuant to an agreement reached with the Department, the Neofotises were to pay $7,000 at the time of the hearing, $7,000 on or before April 26, 2004, and then $3,000 per month on or before the 26th of each month, beginning May 26, 2004, until the balance was paid.  At the time of indictment the unpaid balance was $35,193.67.

Meals Tax

During the same time period, the City was also having difficulty collecting meals tax revenues from the Neofotises.  According to June Hosaflook, the Commissioner of the Revenue for the City of Harrisonburg, the City had to make telephone calls, send delinquency notices, and issue summonses in order to encourage the Neofotises to file meals tax returns and remit the collected meals tax revenues.  In 2004, the Virginia Department of Alcoholic Beverage Control informed the City that it had been investigating the restaurant in connection with its mixed-beverage license, and advised the City of some possible revenue reporting discrepancies. As a result of that information, the City audited the Neofotises' tax records.  The City discovered that the actual gross revenues of the restaurant exceeded the gross revenues the restaurant

- 3 -

reported on its meals tax returns by $588,245 from 2002 through 2004. The City advised the Neofotises of its findings by certified letter, dated April 29, 2004. Based on the underreporting, the City assessed additional taxes along with penalties and interest. In July 2004, Brenda Neofotis signed an agreement acknowledging that $37,473.36 in meals tax revenue had been collected but not paid to the City, and agreeing to repay that amount in installments.

On November 15, 2004, a grand jury indicted Nicky and Brenda Neofotis on charges of embezzlement arising from the nonpayment of taxes to the City and to the Department. Following a bench trial, both of the Neofotises were convicted as charged.

## II. ANALYSIS

### A. Business Records Exception

The Neofotises contend the trial court erred by admitting into evidence the NCM bank records because the Commonwealth allegedly failed to satisfy the requirements of the business records exception to the hearsay rule. "The party attempting to introduce a hearsay statement has the burden of showing the statement falls within one of the exceptions." Robinson v. Commonwealth, 258 Va. 3, 6, 516 S.E.2d 475, 477 (1999). Generally, decisions made by a judge concerning the admissibility of evidence "'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" Michels v. Commonwealth, 47 Va. App. 461, 465, 624 S.E.2d 675, 678 (2006) (citations omitted).

At trial, the Commonwealth called Carolyn Bowen, a manager for Bank of America, to testify regarding bank transactions and concerning the particular bank account set up for NCM by the Neofotises during the time period in question. Based on her experience of working in the banking industry for thirty-five years, Ms. Bowen testified that she is familiar with how bank transactions are recorded, including how checks are deposited and recorded by the bank on a daily basis as a regular part of business. Her testimony further revealed that she had reviewed

- 4 -

and examined the tendered copies of the NCM bank records prior to testifying and found that they were duplicates of official Bank of America records that are kept in the normal course of business.

Defense counsel's primary objection to the admissibility of the bank records was that Ms. Bowen was not the actual custodian of the records and that she failed to demonstrate sufficient familiarity with the documents. The trial judge overruled these objections and admitted the bank records into evidence.

The "shopbook rule" or business records exception to the hearsay rule, permits the introduction "'into evidence of verified regular [business] entries without requiring proof from the original observers or record keepers.'" Sparks v. Commonwealth, 24 Va. App. 279, 282, 482 S.E.2d 69, 70 (1997) (quoting Automatic Sprinkler Corp. v. Coley & Petersen, Inc., 219 Va. 781, 792, 250 S.E.2d 765, 773 (1979)). While original record keepers do not have to testify, a proper custodian must testify that the record is "kept in the ordinary course of business made contemporaneously with the event by persons having the duty to keep a true record." Automatic Sprinker, 219 Va. at 793, 250 S.E.2d at 773.

In a recent case involving the business records exception to the hearsay rule we stressed, "'[t]he trustworthiness or reliability of [business] records is guaranteed by the regularity of their preparation and the fact that the records are relied upon in the transaction of business by the person or entities for which they are kept.'" McDowell v. Commonwealth, 48 Va. App. 104, 109, 628 S.E.2d 542, 544 (2006) (quoting Kettler & Scott, Inc. v. Earth Tech. Cos., Inc., 248 Va. 450, 459, 449 S.E.2d 782, 785-86 (1984)).

In the present case, the trial court did not abuse its discretion. Ms. Bowen's testimony revealed she had personal knowledge concerning how the bank's records are created, stored, and maintained as a regular course of business. See Lee v. Commonwealth, 28 Va. App. 571,

576-77, 507 S.E.2d 629, 632 (1998) (holding that a witness with knowledge of and access to records may properly authenticate business records even though the witness is not the actual custodian of the records).  Additionally, she was familiar with the tendered records after having reviewed and examined them prior to testifying at court and could identify them as official Bank of America records.  Accordingly, she was a proper custodian for purposes of introducing the bank records at trial.

### B.  Sufficiency of the Evidence to Prove Intent

The Neofotises also assert that the evidence adduced at trial was legally insufficient to prove they had the requisite intent necessary to commit embezzlement.  The Neofotises were both indicted under Code § 18.2-111, which states in pertinent part:  "If any person wrongfully and fraudulently use, dispose of, conceal or embezzle any money . . . which he shall have received for another . . . by virtue of his office, trust or employment . . . he shall be guilty of embezzlement."  To establish the statutory crime of embezzlement, the Commonwealth must prove beyond a reasonable doubt that the accused, for their own use or benefit, wrongfully appropriated property entrusted to them with the intent to deprive the owner thereof.  Nestle v. Commonwealth, 22 Va. App. 336, 341, 470 S.E.2d 133, 136 (1996).  A defendant wrongfully appropriates the property of another whenever he exercises dominion and control over the property in a manner inconsistent with the owner's rights.  Evans & Smith v. Commonwealth, 226 Va. 292, 298, 308 S.E.2d 126, 130 (1983); see also Stegall v. Commonwealth, 208 Va. 719, 721, 160 S.E.2d 566, 569 (1968) ("[F]ailure to perform an absolute duty to return the property or failure to pay over on demand constitutes embezzlement . . . .").[3]

---

[3] We note that the question presented for our consideration by the appellants only challenges the sufficiency of the evidence establishing that each had the requisite intent to deprive the owners of the taxes that had been collected; thus, we do not address the trial court's finding that the Commonwealth established the other necessary elements of the crime.  See Rule 5A:12(c) ("Only questions presented in the petition for appeal will be noticed by the Court of

- 6 -

The Commonwealth may prove the intent element necessary for an embezzlement conviction by proving that a defendant has "divert[ed] funds to benefit another"; furthermore "it is not necessary to show that the defendant wrongfully appropriated the entrusted property to his or her own personal use or benefit." Chiang v. Commonwealth, 6 Va. App. 13, 17, 365 S.E.2d 778, 781 (1988). Intent may also be inferred from "'all the facts and circumstances of the case.'" Id. (quoting Stegall, 208 Va. at 723, 160 S.E.2d at 569).

When an appellant challenges the sufficiency of the evidence on appeal, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002). We do not "substitute our judgment for that of the trier of fact." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

It is undisputed on appeal that the Neofotises collected meals and sales tax revenue during the day-to-day operation of their restaurant. It is also clear from the evidence that both of the Neofotises, as the two principles of the L.L.C. that owned the restaurant, had control over the money the restaurant collected for an extended period of time. The evidence establishes that the Neofotises failed to remit the tax revenues to the City and the Department as required by law for approximately twenty-two months. Furthermore, the bank records submitted by the Commonwealth show large amounts of money moving out of NCM's bank account from February 2003 through February 2004 resulting in a final negative balance.

Appeals."). In discussing the element of intent, we accept as fact that each appellant received and wrongfully used, disposed of, or concealed tax revenue belonging to the Commonwealth of Virginia and the City of Harrisonburg.

Based on these facts, we hold that there was sufficient evidence for the trial court to find the intent to deprive the City and the Department of their tax revenues. During the relevant time period funds were deposited into the restaurant's bank account, but were never remitted to the City or to the Department. Simply put, the trial court was justified in concluding that all of the money collected as taxes had been spent on something else.

Furthermore, when the City and the Department moved forward with their collection efforts, the Neofotises failed to make immediate payment and had to enter into agreements under which they would pay the money in installments. The trial court could permissibly infer that the Neofotises' inability to pay the taxes in a lump sum indicated that they no longer had the money to do so. Based upon its review of the itemized expenditures contained in the bank records, the trial court could also infer that both Brenda and Nicky Neofotis had intentionally spent the collected tax revenues for personal expenses, rather than remitting them to the proper taxing authorities. Thus, the evidence is sufficient to establish that the Neofotises had the necessary criminal intent to deprive the City of Harrisonburg and the Virginia Department of Taxation of the tax revenues.

III. CONCLUSION

We therefore hold the trial court did not abuse its discretion when admitting into evidence the bank records under the business records exception to the hearsay rule. We further hold that the trial court did not err in finding the Neofotises had the required intent necessary to commit the crime of embezzlement.

For these reasons, we affirm the convictions of Nicky Neofotis and Brenda Neofotis for embezzlement.

Affirmed.