COURT OF APPEALS OF VIRGINIA


Present:  Judges Haley, Alston and Senior Judge Clements
Argued at Alexandria, Virginia


JAMES ANTHONY DENNIS

MEMORANDUM OPINION[*] BY
v.       Record No. 2257-09-4              JUDGE JEAN HARRISON CLEMENTS
SEPTEMBER 21, 2010

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jan L. Brodie, Judge

Neal Goldberg, Assistant Public Defender (Jason T. Britt, Assistant
Public Defender; Teresa E. McGarrity, Senior Assistant Public
Defender; Office of the Public Defender, on briefs), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


James Anthony Dennis appeals his conviction for grand larceny in violation of Code

§ 18.2-95.  On appeal, Dennis contends (1) the trial court erred in permitting a Commonwealth's

witness to testify about the contents of an electronic record viewed on a computer screen and

(2) there was insufficient evidence to prove he had the requisite larcenous intent.  Assuming without

deciding the trial court erred in allowing the witness testimony, we find the error harmless.  We

also find there was sufficient evidence to sustain appellant's larceny conviction.  Therefore, we

affirm his conviction.

As the parties are fully conversant with the record in this case, and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

BACKGROUND

The Commonwealth charged appellant with grand larceny for failing to return money he obtained after depositing a check that was subsequently returned unpaid.

On July 21, 2008, the grand jury indicted appellant for grand larceny in violation of Code 18.2-95, charging that "[o]n or about the 23rd day of November, 2007," he "did feloniously take, steal and carry away good [sic] and lawful currency . . . belonging to BB&T Bank, valued in excess of $200.00."

At the beginning of his jury trial, appellant alleged a discovery violation relating to copies of computer screen printouts the Commonwealth intended to introduce into evidence. Appellant contended he did not receive printed documents showing the status of his BB&T account on Friday, December 12, 2008, until four days before trial. The Commonwealth acknowledged the late disclosure, and added that if it does not use the computer printouts, it intended to use "the witness[']s testimonial [sic] about what she read off the screen as provided through the Lee v. Commonwealth, 28 Va. App. 571, 507 S.E.2d 629 (1998),] case." The Commonwealth said the information was intended "to show that the bank account did not get in the money that was supposed to come from the checks [sic] that Mr. Dennis deposited. It's to show that the bank never got the money, but they paid out the money. Obviously, to show they had a loss."

The trial court found the Commonwealth violated discovery, granted appellant's motion *in limine*, and refused to allow the Commonwealth to introduce the printouts of the computer screen.

Appellant then objected to admitting at trial any hearsay testimony from the Commonwealth's witness about data she saw on the computer screen and argued such testimony would not fit within the business records exception. The trial court ruled "that will be subject to objection as the case goes on." The Commonwealth indicated it would rely on the holding in Lee, and appellant argued that the Virginia Supreme Court's decision in Decipher, Inc. v. iTribe, Inc., 262 Va. 588, 533 S.E.2d 718 (2001), should control. The trial court withheld ruling at that time.

EVIDENCE AT TRIAL

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

So viewed, the evidence proved that on November 20, 2007, appellant opened a checking account at BB&T bank by depositing a cashier's check made out to him for $9,990 from Lincoln County Bank in Wisconsin and listing the remitter as "C.J. Moore." On November 23, 2007, appellant presented and the bank cashed two $300 counter checks from appellant's account made payable to "Cash." Appellant handwrote his name and address on the top of each of the two checks. On one $300 check he wrote his name as "James Anthony Dennis" with an address of "104 Hollady Ave., Gordonsville, VA 22942." On the other $300 check, appellant listed his name as "James A. Dennis, Jr." with an address at "7475 Little River Trnpk, Apt. 202, Annandale, VA 22003."

On November 24, 2007, appellant presented a third counter check from his newly created account for $7,000. This check listed "James A. Dennis, Jr." as the account holder with an address at "7475 Little River Trnpk, Apt. 202, Annandale, VA 22003."

Peter Follansbee, a "city executive" at BB&T, telephoned appellant on November 30, 2007 about "a check [for $9,990] that was returned on his account, and [advised him] that there were funds used on that account." Follansbee advised appellant the bank intended "to collect the funds on that, the amount that was owed to the bank." Appellant and Follansbee scheduled a meeting for December 3, 2007 to discuss the matter, but appellant never showed.

Postal Inspector Hunter Hutchins arrested appellant on March 20, 2008, Mirandized him, and obtained a statement. Appellant told Hutchins he "received the check from what he termed a business partner whom he had met on Yahoo, that he was to deposit the check into the bank account, withdraw the funds, and send those funds to his business partner, keeping ten percent for himself." Appellant told Hutchins that "at the time he received the check, he did not know that it was not a good check, that he had opened a bank account, that he did deposit the check, and that he did withdraw the funds." Continuing, Hutchins testified that

> [appellant] stated to me that he was subsequently contacted by
> BB&T, informed that the check was no good, and that they had
> asked him to come in and discuss it or set up a payment plan,
> something of that nature.

Appellant said "he was too busy to do that, and that when he realized that he was being scammed, he decided to keep the money for himself." He told Hutchins that he received approximately $10,000 from that check and that he had used the money on bills and shopping.

BB&T bank fraud investigator Ghysliane (Gigi) Frio testified that she investigates losses suffered by the bank and has unfettered access to the bank's computer records. Frio explained that the bank no longer keeps checks that are deposited. Instead, "[e]verything is sent to our item processing centers, there are two processing centers, and they are photographed [microfiched] and stored internally on servers, process servers." Within three days, paper checks are "destroyed."

Frio identified the three withdrawal checks. When the Commonwealth asked Frio if she knew the balance in the checking account, appellant objected on the basis of hearsay. Appellant argued that the Commonwealth was attempting to get into evidence that which the trial court precluded based on the discovery violation, namely, the contents of the computer screen printouts reflecting appellant's account status, and such testimony "constitute[s] hearsay" and "runs afoul of the best evidence rule."

The Commonwealth responded as follows:

> The testimony that is being offered in this [Frio's] testimony is not information that can be produced in the sense of a document. It doesn't fall under the standard 3A:11 category as it goes to the nature of the offense, the fact that there's no larceny, it's in the indictment that he noticed that this is an amount missing out of a bank account.
>
> That's why we're here, that's why there's been an indictment and it goes back to - - it's in the indictment.
>
> Furthermore, what [Frio's] going to testify to is a computer record. I don't understand how it can be provided other than me giving him a computer and access to their account.
>
> Your Honor, what she's going to testify to isn't exactly a printout. They don't keep paper records, Your Honor. They keep records through computer screen [sic], that's why the Lee case is good law is [sic] because they have to be able to testify to records kept in a computer.
>
> So I'm not really sure what [defense counsel] thinks that we could produce for him.

Appellant argued he has "yet to see a computer" screen printout and questioned why the contents of a computer screen cannot be printed and provided. The following exchange took place:

> THE COURT: Well, see, to me a computer record is a document. If she's going to testify as to what she looked at to determine whether or not there was a deposit, then she's looking at a record that could have been printed out.

> MS. SYLVESTER [Prosecutor]:  I understand what Your Honor is saying, but my concern is that many things are kept through computer records that aren't kept in ways that - - information is not kept solely in ways that are printed out.  We create ways sometimes of displaying them in a printout form.  But she can testify to anything she knows within that volume of records.  Anything she has looked at she can testify to.

The trial court asked the prosecutor if she intended to enter any documents into evidence, and she replied, "No, just for testimony about what she saw from the computer."  The trial court replied, "So then that switches us thinking ahead to the hearsay."  In response, the Commonwealth stated its "position on that is that Lee gets it past hearsay because it's something that she read off of a computer screen and the Lee case allows for her to either read it off a computer screen or bring a document if one exists."

The trial court ruled that "we get past the hearsay [objection] with Lee."  It also overruled the best evidence objection.

## ADMISSIBILITY OF FRIO'S TESTIMONY

Relying on the Virginia Supreme Court's decision in Decipher, appellant argues on appeal that Frio's testimony concerning what she learned about appellant's account after viewing the computer screen was inadmissible hearsay.  In the alternative, appellant contends that admission of Frios's testimony violated the best evidence rule.

The Commonwealth contends that Frio's testimony was properly admitted because it was not hearsay, and if it was hearsay, it was properly admitted under the business records exception to the hearsay rule pursuant to this Court's holding in Lee.  Furthermore, the Commonwealth contends, even if the trial court erred, any error was harmless.

Assuming without deciding the trial court erred when it failed to sustain appellant's objections, we hold the error was harmless.

The test for non-constitutional harmless error is as follows:

> "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . . If so, or if one is left in grave doubt, the conviction cannot stand."

Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)). An error is harmless if "other evidence of guilt is 'so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict.'" McLean v. Commonwealth, 32 Va. App. 200, 211, 527 S.E.2d 443, 448 (2000) (quoting Ferguson v. Commonwealth, 16 Va. App. 9, 12, 427 S.E.2d 442, 444-45 (1993)).

In her hearsay testimony, Frio discussed the March 2008 status of the BB&T checking account appellant opened on November 20, 2007 with the $9,990 check. Specifically, she determined that the $9,990 check had come into appellant's account, there were withdrawals of money for the two $300 checks and the $7,000 check, and appellant's account had a negative balance.

That testimony, however, was merely cumulative and corroborative of other evidence. Follansbee advised appellant on November 30, 2007 that the cashier's check had been returned unpaid, and explained that the bank expected appellant to repay the money he received from checks cashed from that account. Despite agreeing to meet with Follansbee, appellant failed to show or otherwise act on the deficit in his account. Moreover, appellant told Hutchins that after learning that the cashier's check was not valid, he was too busy to meet with the bank to set up a repayment plan, and instead kept the money and used it for his personal needs.

Thus, even without Frio's limited testimony about what she observed on the computer screen, the evidence established that appellant deposited a check that was returned, appellant was aware the check had been returned, he did nothing to reimburse the bank, and his account balance remained negative. Accordingly, any error in admitting the testimony was harmless.

SUFFICIENCY

Appellant contends there was insufficient evidence to support his conviction. Specifically, he argues the evidence failed to prove he had the requisite "fraudulent intent" at the time he obtained the money from the bank.

Larceny is defined as the wrongful or fraudulent taking of personal property of some intrinsic value, belonging to another, "without his permission and with the intent to permanently deprive him of that property." Stanley v. Webber, 260 Va. 90, 96, 531 S.E.2d 311, 315 (2000). "'The intent with which property is taken determines the offense.'" Overstreet v. Commonwealth, 17 Va. App. 234, 236, 435 S.E.2d 906, 907-08 (1993) (quoting Slater v. Commonwealth, 179 Va. 264, 267, 18 S.E.2d 909, 911 (1942)).

> To prove that a defendant is guilty of larceny, the Commonwealth must present evidence that the defendant took the property with the *intention* to deprive the owner permanently of his possession of the goods. In determining intent, "the factfinder may consider the conduct of the person involved and all the circumstances revealed by the evidence." Wynn v. Commonwealth, 5 Va. App. 283, 292, 362 S.E.2d 193, 198 (1987). Indeed, "[t]he specific intent in the person's mind may, and often must, be inferred from that person's conduct and statements." Martin v. Commonwealth, 13 Va. App. 524, 527, 414 S.E.2d 401, 402 (1992).

Welch v. Commonwealth, 15 Va. App. 518, 524, 425 S.E.2d 101, 105 (1992).

Appellant argues the Commonwealth failed to exclude "the reasonable hypothesis of innocence" that he believed "the check he received over the Internet was good at the time he" withdrew cash from the account.

- 8 -

"The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003). Furthermore, the question of "[w]hether the hypothesis of innocence is reasonable is itself a 'question of fact,' subject to deferential appellate review." James v. Commonwealth, 53 Va. App. 671, 681, 674 S.E.2d 571, 576 (2009). Thus, consideration of whether a reasonable jury could have excluded a hypothesis of innocence as unreasonable is viewed in the light most favorable to the Commonwealth. Hudson, 265 Va. at 514, 578 S.E.2d at 786. The simple fact that a defendant offers an alternative theory does not mean the Commonwealth has failed to prove guilt beyond a reasonable doubt. Miles v. Commonwealth, 205 Va. 462, 467, 138 S.E.2d 22, 27 (1964). While the jury may not arbitrarily choose a theory incriminating the defendant, Corbett v. Commonwealth, 210 Va. 304, 307, 171 S.E.2d 251, 253 (1969), we may find a jury's decision to convict arbitrary only where no reasonable jury could reach that conclusion, Emerson v. Commonwealth, 43 Va. App. 263, 277, 597 S.E.2d 242, 249 (2004).

Appellant told Hutchins he received a $9,990 cashier's check from someone he claimed to be a business partner whom he met on the internet. The "business partner" directed appellant to deposit the check in his own account and send the "business partner" the proceeds, less $990, or 10%, which appellant was allowed to keep. Appellant opened a new checking account solely for the purpose of depositing the check and, within days, cashed three checks on the newly created account. In filling out the three counter checks, appellant used two different names and addresses. Later, when contacted by Follansbee, appellant did not appear surprised there was a problem with the cashier's check, and he did not show for the meeting he promised to attend. Instead, appellant ignored the bank representatives and decided to keep and use the money from the spurious cashier's check.

Based on all of the evidence, including appellant's actions and statements, the jury could conclude appellant acted with the intent to permanently deprive the bank of its money and find his theory that he was an unknowing victim of a check "scam" unreasonable.

The jury's finding was not plainly contrary to the evidence. Accordingly, the judgment of the trial court in this regard is affirmed.

<u>Affirmed.</u>