## Alexandria
## GEORGE EDWARD PENNY
### v.
## COMMONWEALTH OF VIRGINIA
No. 1364-86-4

Decided July 5, 1988

COUNSEL

Gregory E. Stambaugh (Brown, Hopkins & Stambaugh, on brief), for appellant.

Thomas D. Bagwell, Assistant Attorney General (Mary Sue Terry, Attorney General on brief), for appellee.

OPINION

MOON, J. — George Edward Penny was convicted in Prince William County Circuit Court for making obscene phone calls in violation of Code § 18.2-427. The primary evidence introduced against Penny consisted of computer-generated "call trap" records which designated the residence in which Penny lived as the originating source of the obscene phone calls. Penny appeals and alleges that the computer printouts should not have been admitted into evidence because they were not proven sufficiently reliable. We agree and reverse his conviction.

On March 24, 1986, Ms. Nina C. Hamilton reported to the police that she had received two obscene phone calls. On March 26, 1986, the Continental Telephone Company, in cooperation with the police department, placed a "call trap" on Ms. Hamilton's phone. Subsequently, on April 2, 1986, Ms. Hamilton received two more obscene calls. In all instances the voice was that of a male. The call trap traced the calls to the residence where Penny lived. Penny admitted to police being the only male occupant at his home at the times Ms. Hamilton received the calls, but denied making any such calls.

At trial, the Commonwealth called Ms. Joan Gordon, who testified that she was the local manager of the Continental Telephone Company and that she was recognized as the keeper of the com-

pany's records. She recounted that a call trap is an electronic device which central office repairmen program into the telephone company's computer. Gordon further explained that once the repairmen finishes the manual programming, the computer automatically receives and prints information concerning calls to the number on which the trap is placed.

While she stated that she did not personally oversee the installation or testing of the call trap device, Gordon asserted that she supervised the device. Gordon estimated that she oversaw the implementation of such devices three times per week. In her seven years as manager of the office she was not aware of any malfunction in the call trap device. She asserted that in the past the company's computer system had been reliable. Concurrently, however, she testified that she did not know whether the call trap device had been tested for accuracy in the six months prior to the installation on Hamilton's line. The Commonwealth introduced no evidence that the particular trap placed on Hamilton's line had been tested for accuracy.

During cross-examination, defense counsel made Ms. Gordon his witness and asked her whether she had responded also as the custodian of records to a subpoena relating to malfunctions in the Penny telephone. She responded affirmatively and agreed that she kept the records under her custody and control in the ordinary course of her business. The records were later admitted into evidence during the questioning of defendant's expert witness, Edwin Wentworth, an electronic technician. The records appear to have been printed by a computer and contain the words "high resist N/V." Wentworth testified that these words meant there was a load on the Penny line which was abnormal compared to the regular line voltage. Wentworth opined that the abnormal load could be attributed to corroded wires which, in turn, could cause calls to be traced to Penny's number that did not actually originate from the number. There exists no evidence in the record to show how the computer printouts relating to malfunctions in Penny's phone were generated.

Penny contends that the trial court erred in admitting the telephone company records without the proper foundation. Before reaching the substantive merits of Penny's argument, we must first analyze its procedural disposition.

■ The Commonwealth has argued, pursuant to the holding in *Saunders v. Commonwealth*, 211 Va. 399, 401, 177 S.E.2d 637, 638 (1970), that as a general rule, a party may not sustain a challenge to evidence when that party has introduced evidence of the same nature. Under the facts at bar, reasons the Commonwealth, Penny waived any objections to the Commonwealth's exhibits when he introduced computer printouts during his defense. We disagree.

There exists no evidence in the record to indicate that the defense exhibits concerning malfunctions in Penny's phone were generated in the same way as the Commonwealth's call trap exhibits. The call trap exhibit consisted of evidence generated by a programmed electronic switching device, the reliability of which lies at the crux of this appeal. The Commonwealth points to no evidence which shows that the defendant's exhibits were generated by the same device. Moreover, the Commonwealth's exhibit was generated during preparation for litigation, while the defendant's computer printout evidence appears to be routine information pertaining to customer service. Since we have found that the Commonwealth has not shown that the defendant's evidence is of the same nature as the Commonwealth's evidence, we must conclude that the *Saunders* rule does not bar Penny's substantive claim.

The Commonwealth has argued that even if we consider the merits of Penny's claim, the conviction must be affirmed because the trial court properly admitted the records pursuant to the business records exception to the hearsay rule. The Commonwealth correctly notes that in *Frye v. Commonwealth*, 231 Va. 370, 387, 345 S.E.2d 267, 280 (1986) the Virginia Supreme Court upheld the admission of a computer printout from the National Crime Information Center which showed the defendant had escaped from a West Virginia Correctional facility. The court found the computer printout constituted a proper business records exception to the hearsay rule. Similarly, in *Simpson v. Commonwealth*, 227 Va. 557, 566-67, 318 S.E.2d 386, 392 (1984) the Supreme Court upheld a bookkeeper's testimony concerning readings from a taxicab meter as a valid business records exception .

■ *Simpson* and *Frye* do not control the facts at bar, however, because we do not believe that the admissibility of the exhibits introduced against the defendant should be resolved solely by resort to traditional hearsay analysis. *See People v. Holowko*, 109

Ill. 2d 187, 486 N.E.2d 877 (1985); *State v. Armstead*, 432 So. 2d 837 (La. 1983).[1] While standard computer printouts which simply repeat recorded human observations may constitute a classic form of hearsay, we believe that the admissibility of the computer generated call trap results are more appropriately analyzed as a scientific test.

██ The Supreme Court of the United States has explained that "[t]he primary justification for the exclusion of hearsay is the lack of any opportunity for the adversary to cross-examine the absent declarant whose out-of-court statement is introduced into evidence." *Anderson v. United States*, 417 U.S. 211, 220 (1974); *see also* McCormick, *Evidence* § 245 (3d ed.); 5 Wigmore, *Evidence* § 1362 (Chadbourn Rev. 1974); C. Friend, *Law of Evidence in Virginia*, § 224 (2d ed. 1983). Professor Wigmore has asserted that "[t]he theory of the hearsay rule is that many possible deficiencies, suppressions, sources of error and untrustworthiness which lie underneath the bare untested assertion of a witness, may be best brought to light and exposed by the test of cross-examination." Wigmore, *supra* § 1362. The Virginia Supreme Court has reaffirmed the simple proposition that the basis for excluding hearsay is that it is not subject to the tests which ordinarily exist to ascertain the testimony's truth. *Stevens v. Mirakian*, 177 Va. 123, 131, 12 S.E.2d 780, 783 (1949); *see also Ingram v. Commonwealth*, 1 Va. App. 335, 338, 338 S.E.2d 657, 658 (1986).

With a call trap device, there exists no out-of-court declarant who could be subject to cross-examination. The scientific advances of modern technology have enabled the call trap device to make and record the occurrence of electronic events. No human entered into the call trap device the conclusion that the phone in Penny's residence had completed a contact with the phone in Hamilton's residence. Therefore, the call trap's reliability does not depend on an out-of-court declarant's veracity or perceptive abilities, and no cross-examination could occur which would enhance the truth-finding process. Because the reliability of the results entered at Penny's trial depend on the accuracy of the call trap device, we believe the legal analysis concerning the results' admissibility

---

[1] We recognize that other jurisdictions have chosen to treat call trap evidence as hearsay. *See Brooks v. City of Birmingham*, 488 So. 2d 19 (Ala. Crim. App. 1986); *State v. Knox*, 18 Ohio App. 3d 36, 480 N.E.2d 120 (1984). However, we respectfully decline to adopt their reasoning.

should not be confined to traditional hearsay principles, but rather should focus on reliability of the device itself.

The potentially limitless application of computer technology to evidentiary questions will continually require legal adaptation. Many courts have deliberated over computer printouts within the analytical framework of the business records exception to the hearsay rule. *See Perma Research & Development v. Singer Co.*, 542 F.2d 111, 125 (2d Cir. 1976) (Van Graafeiland, J., dissenting), *cert. denied*, 429 U.S. 987 (1976). The reliability of computers has engendered comment on the admissibility of printouts into evidence.[2] Other jurisdictions have proposed comprehensive schemes to govern the admissibility of computer printouts even after the printouts have qualified as business records. *See Monarch Fed. Sav. & Loan Ass'n v. Genser*, 156 N.J. Super. 107, 124-32, 383 A.2d 475, 484-88 (1977) (foundation requirement included six-part test).

▮ We hold that the call trap results may be admitted only after the particular device in question has been proven reliable. Virginia has recognized radar as a scientifically acceptable means of proving speeding. *See Sweeny v. Commonwealth*, 211 Va. 668, 670, 179 S.E.2d 509, 512 (1971). Moreover, a device similar to the call trap, a pen register, has been accepted as evidence. *See Harmon v. Commonwealth*, 209 Va. 574, 579, 166 S.E.2d 232, 235 (1969). In the radar cases, the Commonwealth retains the burden of proving that the particular device in question is accurate before a court may receive the results into evidence. *Farmer v. Commonwealth*, 205 Va. 609, 611-12, 139 S.E.2d 40, 42 (1964).

Accordingly, we believe that Virginia courts may receive call trap results into evidence only after the Commonwealth has shown the reliability of the particular trap in question. Under the facts at bar, the Commonwealth presented a proper witness to testify concerning the device. Ms. Gordon was the telephone officer charged with overseeing the administration of the call trap. The Commonwealth also correctly elicited information from Ms. Gordon pertaining to the general reliability of the company's computer systems as a whole. However, the Commonwealth presented no

---

[2] Peritz, Computer Data and Reliability: A Call for Authentication of Business Records Under the Federal Rules of Evidence, 7 Computer L. J. 23, 59-63 (1986).

evidence germane to the reliability of the particular trap placed on Ms. Hamilton's phone. For purposes of this case, the witness testifying for the Commonwealth need only have shown that after installing the call trap, someone placed a call which the device accurately traced.[3] In the absence of such information, we must conclude that the results should not have been admitted into evidence.

Because the call trap results were essential to the conviction of Penny, their admission in evidence constituted reversible error.

*Reversed and remanded.*

Duff, J., and Keenan, J., concurred.

---

[3] Our requirement of proof of reliability for each call trap may not necessarily apply to other instances involving computer generated data. We believe that because the call trap is employed for the purposes of litigation and during the competitive process of ferreting out criminal agents, the added check is needed. Under different circumstances, however, where the situation suggests that computer generated results possess sufficient indicia of reliability, then the burden of requiring reliability for each program or device may outweigh its utility.