COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, McClanahan and Alston
Argued by teleconference


TRANG CHAU
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2613-09-4                  JUDGE ROSSIE D. ALSTON, JR.
                                                        FEBRUARY 1, 2011
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                                Thomas D. Horne, Judge

            Bonnie H. Hoffman, Deputy Public Defender (Office of the Public
            Defender, on briefs), for appellant.

            Leah A. Darron, Senior Assistant Attorney General (Kenneth T.
            Cuccinelli, II, Attorney General, on brief), for appellee.


        Trang Chau (appellant) appeals her convictions for two counts of credit card theft and

two counts of credit card fraud.  On appeal, she alleges the following assignments of error:

(1) the Commonwealth failed to lay a sufficient foundation to establish that information relating

to the activation of a Chase credit card was part of a business record and therefore the trial court

erred by admitting that information into evidence; (2) the trial court erred by admitting Discover

Card credit card statements offered by the Commonwealth into evidence because they were not

properly authenticated business records; (3) the trial court erred in refusing to admit documents

related to the prior fraud charge and extradition of one of appellant's acquaintances; (4) the trial

court erred in finding sufficient evidence to convict appellant for the credit card theft charges;

and (5) the trial court erred in finding the evidence sufficient to support appellant's convictions

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

for credit card fraud, as the evidence presented failed to establish venue for those counts. Finding no reversible error, we affirm.

## I.  BACKGROUND[1]

"On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom."  Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

In 2005, Toan Truong (victim) worked as a hairdresser in Arlington County.  Through his work, he became acquainted with appellant, who was one of his customers.  In May 2006, victim, who did not speak English, wished to refinance his home on Essex Avenue in Springfield, Virginia.  He discussed his interest in this endeavor at work, and appellant, who spoke and wrote English, offered to assist victim in refinancing his home.  Victim provided appellant with the original loan documents from 2003 associated with his home.  They contained his social security number, date of birth, and other personal information.  Appellant never returned these documents to victim.

In July 2006, victim refinanced his mortgage.  Under the terms of the new loan, victim's mortgage payment was $1,923 per month.  Appellant was in Vietnam at the time the new mortgage was executed.

### Chase Credit Card

On February 28, 2007, Chase Card Services received an online application for the issuance of a Chase credit card in victim's name.  The application contained victim's social security number, his operator's license number, and his date of birth.  The "Prior Address"

---

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

portion of the application listed victim's current address on Essex Street in Springfield; however, the home address, e-mail address, and home telephone number listed on the application were all associated with appellant. The online application was approved, and a Chase credit card was mailed to appellant's home on Saddleback Place in Leesburg, which is in Loudoun County, Virginia. Over appellant's objection, a Chase Credit Services fraud investigator testified at trial that on March 22, 2007, the credit card was activated using appellant's home telephone number.

Between March 28, 2007, and July 22, 2007, charges totaling $5,712.46 were made on the Chase credit card. Monthly statements were mailed to appellant's Saddleback Place address. At trial, victim testified that he learned of the existence of the Chase credit card when he was contacted by a collection agency in October 2007.

On December 30, 2007, victim signed a fraudulent application affidavit, which disclaimed any knowledge or authorization of the opening of the Chase credit card or the purchases made using the Chase credit card. At trial, victim testified that he did not apply for the Chase credit card, nor did he give anyone else permission to apply for the credit card in his name. He further testified that he did not make any of the purchases appearing on the Chase credit card statements or authorize anyone to make those purchases. He stated that he became aware of the account when he was contacted by collection agencies; it is noted, however, that the Chase Card Services fraud investigator testified that based on the documents before her, it did not appear that the account had been "turned over to a collection agency."

Discover Card Credit Card

On April 14, 2007, Discover Card Services received an online application for a credit card in victim's name. Similar to the circumstances associated with the application for the Chase credit card, this credit card application listed victim's social security number and his date of birth, but provided appellant's home address, e-mail address, and home and cell phone numbers.

In the blank for "Monthly Housing [Expenses]," the application read "$1923," which was the amount of victim's monthly mortgage payment. Pursuant to the application, Discover Card Services mailed a credit card to appellant's address on Saddleback Place in Loudoun County and sent e-mails about the credit card to appellant's e-mail address on September 21, 2007, and December 1, 2007.

On April 28, 2007, $9,000 was transferred from the Discover Card credit card to a Bank of America credit card account. On June 8, 2007, two US Airways plane tickets worth $311.30 each were purchased using the Discover Card credit card. Appellant and her daughter used these plane tickets to return to Loudoun County from Portland, Oregon. At trial, appellant claimed that her friend, Thanh Bach, purchased the tickets for her and her daughter.

Over appellant's objection, the trial court accepted testimony that the Discover Card credit card monthly statements for April 2007 to January 2008 were mailed to appellant's home address. The Commonwealth also presented evidence that Discover Card personnel sent five e-mails regarding the Discover Card account to appellant's e-mail address on August 13 and 21, September 21 and 24, and December 1, 2007. Appellant's cell phone records revealed that Discover Card call centers called her cell phone numerous times in August and September 2007. At trial, appellant denied receiving e-mails or telephone calls from Discover Card Services.

In January 2008, victim contacted Discover Card to report fraudulent activity on the credit card account in his name. On March 27, 2008, victim executed an affidavit of identity theft, disclaiming any knowledge or authorization of the credit card application or the charges using the credit card in his name.[2]

---

[2] It appears from the Discover Card file that Discover Card personnel attempted to contact victim between January 2008 and March 2008, but that these attempts were unsuccessful.

Bank of America Credit Card

An online application in victim's name was also completed for a Bank of America credit card. Again, the application listed victim's social security number and date of birth and appellant's home address, work telephone number, and cell phone number. Additionally, the application listed the applicant's maiden name as "[T]ran." Notably, appellant's mother's name is Dung Tran.

The April 2007 $9,000 balance transfer from the Discover Card account to the Bank of America credit card account permitted convenience checks written on the account to be cashed at a Chevy Chase Bank. Four cashed convenience checks payable to appellant and appellant's mother, totaling $27,500, were admitted into evidence at trial. Although no direct evidence as to who actually cashed these checks was admitted at trial, appellant admitted that the signature on the checks in her name was "very similar" to her signature and that she had an account at Chevy Chase Bank.

Victim testified at trial that he learned of the existence of the Bank of America account when he was contacted by a collection agency. He signed a fraud affidavit averring he did not open the account, nor did he authorize the opening of the account. Finally, he testified that he did not draft the convenience checks, nor did he give anyone permission to draft the checks for him.

Investigation

When victim became aware of the existence of the credit card accounts in his name, he reported the fraudulent activity to Detective T. Polhemus of the Fairfax County Police Department. At trial, Polhemus testified that victim stated he found the fraudulent activity on the credit card accounts when he attempted to refinance his mortgage and found the information on

his credit report. To this end, Polhemus stated that victim did not mention the collection agency's contact with him.

Thereafter, Loudoun County Detective P. Holserland and U.S. Postal Inspector G. Laughlin took over the investigation. Initially, they spoke with one of appellant's friends. Subsequently, this friend called appellant, informed her that the police were investigating appellant, and gave appellant Holserland's contact number. Appellant called the contact number using her home telephone, and when the detective answered the call, she asked for the Leesburg Water Department and hung up.

Shortly after receiving appellant's call, Holserland and Laughlin went to appellant's home on Saddleback Place. Appellant answered the door, and during the ensuing interview, she acknowledged that she was aware of the credit cards in victim's name. She stated that she and victim had an agreement that she would pay victim's credit card bills because he did not speak English. She further stated that there was a misunderstanding, and she repeatedly asked that the officers contact victim. While Holserland was present, "she never made statements indicating that she had knowledge of . . . how the account was opened." However, Holserland stepped away from the interview for approximately ten minutes to take a telephone call. While he was away, appellant told Laughlin that she obtained the credit cards with victim's permission and that she would take full responsibility for paying off the balances. She also stated that she opened the credit card accounts at victim's request, in an effort to help him pay his bills.

After the interview, appellant gave the law enforcement officers permission to perform a cursory search of her home. They did not locate any of the suspect credit cards, any of the merchandise alleged to have been purchased with the Chase credit card, or any documents or mail in victim's name, although they did note that appellant had access to a computer. They also noted that several adults appeared to be living in appellant's home.

Trial

In July 2008, appellant was indicted for the following crimes: credit card theft, in violation of Code § 18.2-192(1)(a); felony credit card fraud, in violation of Code § 18.2-195; credit card theft, in violation of Code § 18.2-192(1)(a); and felony credit card fraud, in violation of Code § 18.2-195. The Commonwealth alleged appellant committed the first two crimes on or about February 28, 2007, and the last two crimes on or about April 14, 2007.[3]

At trial, victim admitted that he had loaned appellant $5,000 and had contacted appellant about repayment just before he alerted the authorities to the fraudulent activity on his credit card accounts. He testified that at the time of the fraud allegations, appellant had not repaid the loan. Appellant submitted evidence that over the fifteen months appellant and victim knew each other, they frequently called each other, sometimes several times per day.

Appellant testified in her own defense. She had four previous felony convictions and two previous misdemeanor convictions for crimes of moral turpitude. She testified that she had regular social contact with victim and had assisted him and his wife in the navigation of complex matters involving their green card and health insurance. She further stated that she knew nothing about the credit card accounts and denied telling the law enforcement officers that she was aware of the accounts. She also testified that anyone could have picked up mail at her mailbox and that, specifically, her friend Thanh Bach had unlimited access to her home, which included access to her computer, e-mail, bank accounts, and mail. Appellant claimed that Bach had bought the airline tickets for her and her daughter's return to Virginia from Oregon, but appellant did not expressly testify that Bach had used victim's credit card to purchase the airline tickets.

---

[3] Appellant was also indicted for two charges of felony identity theft; however the trial court dismissed these two charges.

- 7 -

Prior to rendering its verdict, the trial court found that venue in Loudoun County had been established by circumstantial evidence. Thereafter, in considering the evidence, the trial court credited the testimony of the investigating officers and found that appellant had access to victim's personal information. Moreover, the trial court found that appellant's criminal history undermined her credibility as a witness. Subsequently, the trial court found appellant guilty of two counts of felony credit card theft and two counts of felony credit card fraud. This appeal followed.

## II. ANALYSIS

### A. Testimony regarding Chase credit card activation

On appeal, appellant argues that the trial court erred in admitting into evidence information relating to the activation of the Chase credit card in victim's name as an exception to the hearsay rule. At trial, Barbara Simcox, a Chase Card Services fraud investigator, testified on behalf of the Commonwealth. Preliminarily, she testified that Chase Card Services maintains records on the credit cards it issues, "maintain[s] records in regards to [credit card] applications," and "maintain[s] records in regards to charges . . . [a]nd payments on the account[s]." Simcox also testified that Chase Card Services maintains records on "customer service contacts" on accounts and that these records were "made contemporaneously with the actions on [an] account." Simcox, as a fraud investigator, had access to all of these records.

The Commonwealth then admitted, without objection, the following exhibits into evidence: the application for the Chase credit card in two different formats, the Chase credit card billing statements, victim's forgery affidavit relating to the account, and an "account screen print out," which Simcox described as an "account event detail which documents some activity on the account."

The Commonwealth next asked Simcox what phone number was used to activate the credit card issued on the account in victim's name. Simcox attempted to refresh her recollection of this information using a Chase record that was not admitted into evidence. The Commonwealth proffered that the document was a computer record that showed when the credit card was activated via the automated computer system. Appellant objected to Simcox's reading of the computer record, on the grounds that Simcox was not using the record to refresh her recollection; rather she was merely relating the information contained in the computer record.

In response to appellant's objection, the trial court directed the Commonwealth to lay a foundation that the information was part of a business record. Simcox testified that Chase Card Services "maintain[ed] a record with regards to the phone number that's used to activate a card." Again, Simcox testified that she has access to these records as a fraud investigator and that these records are created contemporaneously with the activation of the card. When Simcox attempted to provide the phone number that was used to activate the Chase credit card, appellant objected on the grounds that the Commonwealth still had not laid a sufficient foundation. In response, Simcox testified,

> When calls come into the bank, they're electronically recorded and we have specific phone numbers set up for card activation. The card, at the time of activation, the account auto-comments on the account. It's electronically commented at the time of activation. . . . [The phone number is] captured within the system.

Appellant again argued that sufficient foundation had not been laid to allow Simcox to testify regarding the computer record. The trial court overruled the objection and allowed Simcox to testify that the Chase credit card was activated on March 22, 2007, from a telephone number later identified as the land line at appellant's Saddleback Place residence.

"'The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" Jones v.

Commonwealth, 50 Va. App. 437, 446, 650 S.E.2d 859, 863 (2007) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16-17, 371 S.E.2d 838, 842 (1998)).  A proponent of hearsay evidence must lay the proper foundation to establish that the document is a business record prior to the trial court's admission of the document into evidence.  The proponent "'must clearly show' that the evidence falls within an exception to the rule excluding hearsay," Jones v. Commonwealth, 38 Va. App. 231, 236, 563 S.E.2d 364, 366 (2002) (quoting Doe v. Thomas, 227 Va. 466, 472, 318 S.E.2d 382, 386 (1984)), and in this regard, "'the burden of persuasion is proof by the preponderance of the evidence,'" id. (quoting Rabeiro v. Commonwealth, 10 Va. App. 61, 64-65, 389 S.E.2d 731, 733 (1990)).

"'Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.'" Tatum v. Commonwealth, 17 Va. App. 585, 588, 440 S.E.2d 133, 135 (1994) (quoting Stevenson v. Commonwealth, 218 Va. 462, 465, 237 S.E.2d 779, 781 (1977)).  "Under the modern Shopbook Rule, adopted in Virginia, verified regular entries may be admitted into evidence without requiring proof from the regular observers or record keepers." "Automatic" Sprinkler Corp. v. Coley & Peterson, Inc., 219 Va. 781, 792, 250 S.E.2d 765, 773 (1979) (citing Neeley v. Johnson, 215 Va. 565, 571, 211 S.E.2d 100, 106 (1975); duPont Co. v. Universal Moulded Prods. Corp., 191 Va. 525, 567-68, 62 S.E.2d 233, 252 (1950)).  This rule generally limits the admission of such evidence to "facts or events within the personal knowledge of the recorder to which he could testify if called as witness." Id. (citing Boone v. Commonwealth, 213 Va. 695, 697, 194 S.E.2d 689, 690 (1973)).  There are exceptions to this general limitation, for "practical necessity requires the admission of written factual evidence based on considerations other than the personal knowledge of the recorder, provided there is a circumstantial guarantee of

trustworthiness." Id. (citing French v. Virginian Ry., 121 Va. 383, 387-88, 93 S.E. 585, 586 (1917); 5 Wigmore on Evidence § 1530, at 449-52 (Chadbourn rev. 1974)).

In the instant case, the "recorder" was a Chase Card Services computer, which automatically documented information related to the activation of a credit card, including the number from which the credit card was activated. When an electronic device identifies a phone number automatically, "there is no 'out-of-court asserter,'" because the record "is based on computer generated information and not simply the repetition of prior recorded human input or observation." Tatum, 17 Va. App. at 588, 440 S.E.2d at 135 (describing why a caller ID display did not constitute an "out-of-court asserter" under the hearsay rule).[4]

Here, without any human input or observation, the telephone numbers from which credit cards were activated were automatically recorded by a computer. Thus, there was no "out-of-court asserter" to trigger the hearsay rule in the instant case. However, because there was no human witness with personal knowledge of the computer-generated information, we must still determine whether Chase Card Services' automated computer system was reliable. This Court has previously held that when a record is "based on computer generated information and

---

[4] Charles Friend, in the sixth edition of the The Law of Evidence in Virginia, provides further guidance on this matter: "When a witness seeks to testify as to the witness's observations of a computer display or the readout of other electronic devices, the hearsay objection is often raised. In such instances, the argument is, in effect, that the witness is testifying to what the device 'said.'" Charles E. Friend, The Law of Evidence in Virginia § 18.5 (6th ed. 2003). "In general, however, the courts have treated such matters as being outside of the ambit of the hearsay rule." Id.

> Note that these principles apply to instances where the information
> is generated by the device itself, and is not the result of input of
> information by a human "asserter" for later retrieval. Where a
> human being has input information into computer data banks as
> records that are later retrieved for use, it may be argued that there
> is an "out-of-court asserter," thus subjecting testimony about the
> information to the strictures of the hearsay rule.

Id.

not simply the repetition of prior recorded human input or observation," id., the record is admissible only if "'the particular device [i.e., automated computer system,] in question has been proved reliable.'" Id. at 588-89, 440 S.E.2d at 136 (quoting Penny v. Commonwealth, 6 Va. App. 494, 499, 370 S.E.2d 314, 317 (1988)). "The trustworthiness or reliability of the records is guaranteed by the regularity of their preparation and the fact that the records are relied upon in the transaction of business by the person or entities for which they are kept." "Automatic" Sprinkler, 219 Va. at 793, 250 S.E.2d at 773 (citing Charles V. Laughlin, Business Entries and the Like, 276 Iowa L. Rev. 276, 276-77, 298 (1961)). "Admission of such evidence is conditioned, therefore, on proof that the document comes from the proper custodian and that it is a record kept in the ordinary course of business made contemporaneously with the event by persons [or devices] having the duty to keep a true record." Id. (citing French, 121 Va. at 388-89, 93 S.E. at 586; Charles Friend, The Law of Evidence in Virginia § 235, at 428-29 (1977)). Accord Marefield Meadows, Inc. v. Lorenz, 245 Va. 255, 264, 427 S.E.2d 363, 368 (1993); Ashley v. Commonwealth, 220 Va. 705, 708, 261 S.E.2d 323, 325 (1980).

"This approach 'necessarily requires that a determination as to admissibility be made on the facts of each case.'" Kettler & Scott v. Earth Tech. Cos., 248 Va. 450, 457, 449 S.E.2d 782, 786 (1994) (quoting "Automatic" Sprinkler, 219 Va. at 793, 250 S.E.2d at 773). In the instant case, Simcox testified that the phone numbers used to activate credit cards were automatically recorded electronically, absent the involvement of any Chase Card Services employee. There was credible evidence to support the trial court's findings that the record was prepared, and regularly relied upon, in Chase Card Services' ordinary course of business. Accordingly, we

find that the trial court did not abuse its discretion in allowing Simcox to testify that the Chase credit card was activated from a telephone number associated with appellant's residence.[5]

### B. Testimony regarding the Discover Card credit card statements

Next, appellant contends that the trial court erred in holding the Discover Card credit card statements entered into evidence were business records that were admissible under an exception to the hearsay rule. At trial, the Commonwealth offered Discover Card credit card statements with closing dates ranging from May 9, 2007, to May 8, 2008, into evidence without objection. The statements were addressed to victim, at his Essex Avenue address in Springfield. Later, the Commonwealth asked Andrew Stack, a financial investigator with Discover Financial Services, what address "the account was initially opened to." Stack responded that the account was initially opened to appellant's Saddleback Place address, but that on January 30, 2008, the address associated with the account was changed from the Saddleback Place address to victim's Essex Avenue address. Stack based his answer on the "account notes" associated with the credit card in victim's name.[6] Stack explained that the account notes were "maintained in [Discover Financial Services'] data base . . . . It allow[ed] employees to add a note to the account that [was] appropriate to what [was] being done at that time." He testified that the account notes were made contemporaneously when actions or contacts were made in regard to the account.

Stack, using the account notes, explained that the credit card statements admitted into evidence were different from the original statements mailed in 2007, in that the statements

---

[5] We briefly note that the computer record from which Simcox read was not admitted into evidence; Simcox merely testified as to its contents. Appellant made no objection at trial regarding Simcox's recitation of the information on the computer record, nor did she raise this issue on appeal; accordingly, we consider it to be waived. Rule 5A:12(c); Cruz v. Commonwealth, 12 Va. App. 661, 664 n.1, 406 S.E.2d 406, 407 n.1 (1991).

[6] Appellant did not object to Stack's reliance on the account notes, which were not admitted into evidence, during his testimony.

- 13 -

admitted into evidence reflected the Essex Avenue address, rather than the Saddleback Place address, which was on the original statements. Stack further stated that when a change of address was made on the account, the computer system automatically changed the address on the electronic version of past statements. Stack testified that had he produced hard copies of the original statements, the address that would have appeared was appellant's address, not victim's address, for the 2007 credit card statements were mailed to appellant's Saddleback Place address.

Throughout Stack's testimony, appellant objected on the grounds that the previously admitted credit card statements were not in fact true and accurate copies of the documents that were mailed in 2007 and, as such, they did not constitute business records under the hearsay rule.

On review of the record, we disagree with appellant and find that the trial court did not abuse its discretion in finding the credit card statements were business records. To reach this conclusion, we engage in an analysis very similar to our consideration of the first issue raised by appellant. Again, we must determine whether the Commonwealth clearly showed by the preponderance of the evidence that the Discover Card credit card statements were business records. Jones, 38 Va. App. at 236, 563 S.E.2d at 366. For the Commonwealth to prove the statements were business records, the Commonwealth had to prove the statements came from a proper custodian, were "a record kept in the ordinary course of business made contemporaneously with the event by persons having the duty to keep a true record, "Automatic" Sprinkler, 219 Va. at 793, 250 S.E.2d at 773 (citing French, 121 Va. at 388-89, 93 S.E. at 586; Friend, *supra*, at 428-29), and that the statements "are the type of records which are relied upon by those who prepare them or for whom they are prepared," id. (citing Laughlin, *supra*, at 299). In attempting to lay this foundation, the proponent may present the testimony of a witness who has knowledge of how the statements were created and maintained and who had access to the records. Lee v. Commonwealth, 28 Va. App. 571, 576, 507 S.E.2d 629, 632 (1998).

Stack testified that in the course of doing business, Discover Financial Services maintained records in relation to the charges and payments on credit cards and that these records are made contemporaneously with the actions taken with regard to the credit accounts. He further testified that as a financial investigator, he had access to the credit card records. According to Stack, the statements were an accurate account of Discover Card Services' records at the time they were printed prior to trial. The fact that the statements were not exact replicas of the statements that were sent in 2007 goes to their weight as evidence, not to their admissibility as business records. Accordingly, the trial court did not err in admitting the credit card statements under the business record exception to the hearsay rule.

### C. Evidence relating to Thanh Bach

At trial, appellant attempted to argue that Bach committed the crimes against victim. To this end, appellant testified at trial that Bach had unlimited access to her home, including her computer, mailbox, e-mail account, and bank accounts, during the time of the credit card theft and fraud. Diana Vo, Bach's ex-wife, testified that Bach left Virginia on October 4, 2008, and that since October 2008, Vo had only seen Bach once, while she was visiting California.

Peter Kopko, an investigator for the Loudoun County Public Defender's Office, also testified on appellant's behalf. He stated that he began investigating appellant's case in September 2008. Through Kopko, appellant attempted to offer into evidence copies of documents relating to the prosecution of Bach for a 2000 fraud charge in Virginia, including a copy of the 2001 waiver of extradition, in which Bach agreed to return to Virginia from California. The Commonwealth objected to the admission of these documents on relevance grounds. The trial court admitted the waiver of extradition, but only for the purpose of providing a handwriting exemplar for Bach, which could be compared to the Bank of America convenience checks. The trial court denied the admission of the remaining documents.

- 15 -

Appellant asserts the trial court erred in refusing to admit the certified copies of the documents related to Bach's 2000 fraud charge in Virginia. Appellant argues that the extradition documents should have been admitted because they showed that when Bach was accused of fraudulent criminal activity in Virginia in 2000, he fled to California. Appellant contends that this fact adds weight to her argument that Bach again fled in October 2008 because of his involvement in the defrauding of victim.

"The determination to admit . . . relevant evidence rests within the trial court's sound discretion and will be disturbed on appeal only upon a showing of an abuse of that discretion." Juniper v. Commonwealth, 271 Va. 362, 412, 626 S.E.2d 383, 415 (2006) (citing Dandridge v. Marshall, 276 Va. 591, 596, 594 S.E.2d 578, 581 (2004)).

> To be admissible, evidence must relate and be confined to matters in issue, and it must tend to prove or disprove these matters or be pertinent to them. It is fundamental that evidence of collateral facts or those incapable of affording any reasonable presumption or inference on the matter in issue because too remote or irrelevant cannot be accepted in evidence.

Boggs v. Commonwealth, 199 Va. 478, 486, 100 S.E.2d 766, 772 (1957) (citing 20 Am. Jur., Evidence, § 248).

> "[P]roffered evidence that merely suggests a third party may have committed the crime charged is inadmissible; only when the proffered evidence tends clearly to point to some other person as the guilty party will such proof be admitted. . . . [A] large discretion must and should remain vested in the trial court as to the admission of this class of testimony."

Juniper, 271 Va. at 412, 626 S.E.2d at 415 (quoting Elliott v. Commonwealth, 267 Va. 396, 424, 593 S.E.2d 270, 287 (2004)) (second and third alterations in original).

Here, while appellant testified Bach had access to her home, there was also evidence that multiple individuals, including Bach, lived in her home. Further, no evidence suggested that in 2001 Bach was in California as a result of his involvement in the 2000 fraud offense; nor did any

evidence suggest that Bach was aware of a fraud investigation when he left Virginia in 2008. Based on this record, the Court cannot say that the trial court abused its discretion in concluding the extradition documents were not relevant and refusing to admit them.

### D.  Sufficiency of the evidence for credit card theft convictions

Appellant next contends the evidence was insufficient to support her convictions for credit card theft.  Specifically, she asserts a fatal variance existed between the evidence presented at trial and the allegations contained in the indictments.

The credit card theft indictments alleged that appellant

> did feloniously and unlawfully take, obtain or withhold a credit card or credit card number from the person, possession, custody or control of another without the cardholder's consent *and* with the knowledge it had been so taken, obtained or withheld, received the credit card or credit card number with the intent to use it or sell it, or transfer it to a person other than the issuer or cardholder.

(Emphasis added).  The indictments were identical except for the date of the offenses.  One indictment alleged that appellant committed credit card fraud "on or about February 28, 2007," while the date of the offense detailed in the other indictment was "on or about April 14, 2007." Appellant now argues that the Commonwealth was obligated to prove that appellant both obtained and received the Chase credit card on or about February 28, 2007, that appellant both obtained and received the Discover Card credit card on or about April 14, 2007, and that the evidence failed to prove the date when the Chase credit card was received and when the Discover Card credit card was activated or received.

Code § 18.2-192(1)(a), under which appellant was charged, states that a person is guilty of credit card theft when

> [h]e takes, obtains or withholds a credit card or credit card number from the person, possession, custody or control of another without the cardholder's consent *or* who, with knowledge that it has been so taken, obtained or withheld, receives the credit card or credit

- 17 -

card number with intent to use it or sell it, or to transfer it to a person other than the issuer or the cardholder . . . .

(Emphasis added). Appellant argues that although the language of Code § 18.2-192(1)(a) describes the two clauses in the disjunctive, the Commonwealth in drafting the indictments stated the clauses in the conjunctive and thus modified the Commonwealth's burden of proof. Appellant alleges there was no proof regarding when the second clause in the indictments occurred and, therefore, the convictions cannot stand, as the evidence does not satisfy the elements laid out in the indictments.

An indictment must "inform the accused of the nature and cause of the accusation against [her] . . . [to] assure[ ] the accused a fair and impartial trial on the merits." Marlowe v. Commonwealth, 2 Va. App. 619, 625, 347 S.E.2d 167, 171 (1986) (citing Hairston v. Commonwealth, 2 Va. App. 211, 213, 343 S.E.2d 355, 357 (1986)). Code § 19.2-220 provides that the indictment shall "recit[e] that the accused committed the offense on or about a certain date." However, Code § 19.2-226(6) states that an indictment shall not be deemed invalid "[f]or omitting to state, or stating imperfectly, the time at which the offense was committed when time is not the essence of the offense . . . ." Moreover, the Supreme Court of Virginia has ruled, "[i]n a felony case the Commonwealth may prove the commission of a crime charged on a date different from that alleged in the indictment." Harris v. Commonwealth, 185 Va. 26, 34, 37 S.E.2d 868, 871 (1946) (citing Puckett v. Commonwealth, 134 Va. 574, 113 S.E. 853 (1922); Stapleton v. Commonwealth, 140 Va. 475, 124 S.E. 237 (1924)). Specifically,

> When time is not an element of the crime charged, the . . . verdict will stand if the evidence is sufficient to prove beyond a reasonable doubt that a crime occurred and that the defendant committed the crime, even though the evidence is such that there may be a reasonable doubt as to the day on which the offense occurred. Such a result does not constitute a denial of due process of law.

Marlowe, 2 Va. App. at 623-24, 347 S.E.2d at 170.

- 18 -

Appellant provides no case law or authority to support her contention that time is an element of the offense of credit card theft. As time is not an element of the offense of credit card theft, the Commonwealth was not required to prove the exact date of the offenses, as long as the evidence established beyond a reasonable doubt that the crimes occurred and appellant committed the crimes. There was sufficient evidence to show that appellant obtained the credit cards and received the credit cards and, therefore, the trial court did not err in finding the evidence sufficient to prove the offenses.

### E. Venue for credit card fraud charges

Finally, appellant contends the trial court erred in finding there was sufficient evidence to establish that the proper venue for the credit card charges was Loudoun County. "When venue is challenged on appeal, we determine 'whether the evidence, when viewed in the light most favorable to the Commonwealth, is sufficient to support the [trial court's] venue findings.'" Morris v. Commonwealth, 51 Va. App. 459, 464-65, 658 S.E.2d 708, 710-11 (2008) (quoting Cheng v. Commonwealth, 240 Va. 26, 36, 393 S.E.2d 599, 604 (1990)) (alteration in original).

Venue in credit card fraud cases is specified by Code § 18.2-198.1, which, at the time the fraud offenses occurred, stated that venue is proper in any jurisdiction in which "any act in furtherance of the crime was committed."[7] Here, appellant told Laughlin that she obtained the credit cards, Simcox testified that the Chase credit card was activated from appellant's Loudoun County home, and Stack testified that the Discover Card credit card statements were sent to appellant's Loudoun County home. Accordingly, the trial court did not err in finding that an act

---

[7] In 2008, the General Assembly amended Code § 18.2-198.1, and added a sentence providing, "A prosecution for a violation of [Code] § 18.2-192 may be had in any county or city where a credit card number is used, is attempted to be used, or is possessed with intent to violate [Code §§] 18.2-193, 18.2-195, or 18.2-197."

in furtherance of the credit card fraud occurred in Loudoun County and holding that venue was appropriate in that jurisdiction.

### III.  CONCLUSION

For the aforementioned reasons, we affirm appellant's convictions.

<u>Affirmed.</u>