PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Alston, McCullough and Huff
Argued at Alexandria, Virginia


ERNESTO WILFREDO SOLANO GODOY

                                                          OPINION BY
v.        Record No. 0369-12-4                   JUDGE GLEN A. HUFF
                                                          MAY 28, 2013

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
R. Terrence Ney, Judge

Harold N. Ward, Jr. (The Ward Law Office, P.C., on briefs), for
appellant.

Susan Baumgartner, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Ernesto Wilfredo Solano Godoy ("appellant") appeals his convictions of burglary, in

violation of Code § 18.2-90; rape, in violation of Code § 18.2-61; two counts of object sexual

penetration, in violation of Code § 18.2-67.2; and sodomy, in violation of Code § 18.2-67.1.

Following a jury trial in the Circuit Court of Fairfax County ("trial court"), appellant was

sentenced to a cumulative total of 150 years in prison, with 10 years suspended on the rape

conviction.  The trial court ordered that the sentences for the burglary, object sexual penetration,

and sodomy convictions run concurrently with the sentence for the rape conviction, thus giving

appellant an active sentence of thirty-five years in prison.

On appeal, appellant contends that the trial court erred in admitting into evidence

Commonwealth's Exhibit 47, which depicted his telephone records from the night of the offense.

Specifically, appellant argues the exhibit did not fall within the business records exception to the

hearsay rule.  For the following reasons, we affirm the trial court's judgment.

I. BACKGROUND

On appeal, "'we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial.'" Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (en banc) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)). So viewed, the evidence is as follows.

At trial, the Commonwealth presented evidence that appellant used various tools to pry open the balcony door of K.A.A.'s apartment and entered her bedroom in the early morning of June 4, 2011. K.A.A. awoke to see a masked individual picking up her infant child from her bed and placing the infant in his crib nearby. When K.A.A. asked who was there, appellant approached her and brandished a large knife, which he dragged across the length of her body while indicating that she remain quiet. Appellant then raped and sodomized K.A.A. repeatedly, at one point threatening to return the following day and kill her.

Following the attack, appellant demonstrated to K.A.A. that he had not harmed her three children who were sleeping in a different room. He left shortly thereafter, and K.A.A. called a friend then contacted 911. K.A.A. subsequently was examined by a trained sexual assault nurse, who observed abrasions and redness consistent with forcible rape. In inspecting K.A.A.'s apartment, police found fingerprints and a shoe impression on the balcony railing. They also found a bottle of bleach apparently used for the purpose of removing evidence of the prints, as well as fingerprints on a number of tools located on the balcony. The knife appellant used was discovered on the floor of K.A.A.'s bedroom. Police apprehended appellant after showing a sketch of the perpetrator to K.A.A.'s colleagues at work, one of whom recognized appellant as a former employee.

Appellant presented evidence in his defense that he and K.A.A. had been conducting an affair and that she had invited him to her apartment on the night of the offense. According to appellant, K.A.A. became angry with him throughout the course of the evening because he was attempting to break off the relationship, causing him to retreat to the balcony at one point. While appellant was on the balcony, his cellular telephone began to ring with a unique ringtone that signified his wife was calling. Appellant claimed that K.A.A. grabbed the telephone, locked the balcony door with appellant still outside, and proceeded to taunt appellant, indicating that she would answer the call and report their affair to his wife. Appellant then attempted to pry open the balcony door using tools that he found outside. K.A.A., however, chose not to answer the phone and eventually let appellant back inside the apartment.

Appellant admitted that he had sexual intercourse with K.A.A. and that he touched her sexually in the various ways alleged in the Commonwealth's case-in-chief, but stated that all of the acts were consensual. He stated that he already knew how to get to K.A.A.'s apartment because he had visited on a previous occasion to discuss purchasing an auto part from her boyfriend.

At trial, the Commonwealth called Ronald Witt ("Witt"), a custodian of records for T-Mobile telephone company, as a witness. Witt testified that his primary responsibility as a records custodian was to "produce records pursuant to requests from the courts who subpoenas [sic] court ordered search warrants." In responding to how the records were generated in relation to the placement and receipt of telephone calls, Witt stated that "the records are self-generating automatically through the computer system as the calls are received or made." The Commonwealth then asked, "[s]o, it's not a physical human person inputting data to generate these records?" Witt responded that there was not. Witt also testified that T-Mobile's telephone records were kept within the normal course of business and that the records were relied upon by employees in order to perform work-related functions.

The Commonwealth then sought to introduce into evidence Exhibit 47, which consisted of appellant's telephone records from the night of the offense. Witt confirmed that he had examined the proffered document and that it accurately depicted T-Mobile's records. Appellant objected, stating, "I'm not sure all of the elements of the business record have been met yet. But in any event, the relevance of any such records[,] if these are business records[,] to this case, have not yet been established."

The Commonwealth then recalled a detective to the stand who verified that the telephone records in question were the records of appellant's cellular telephone. Having established such, the Commonwealth again sought to have the records admitted into evidence. Appellant objected again, stating, "I still believe that they have not satisfied all the elements for business record. I will not repeat what they are because I don't want to help the Commonwealth with it's [sic] case. But I think there's at least one element missing." The trial court overruled appellant's objection and admitted the telephone records into evidence. This appeal followed.

## II. ANALYSIS

On appeal, appellant contends that the trial court erred in admitting into evidence Commonwealth's Exhibit 47, which depicted his cellular telephone records from the night of the offense. Specifically, appellant argues the exhibit did not fall under the business records exception to the hearsay rule, and thus its unlawful admission unfairly discredited his version of the events that occurred.[1]

---

[1] The Commonwealth asserts that appellant did not preserve his objection in the trial court as required by Rule 5A:18, thus barring the issue on appeal. See Rule 5A:18 (stating "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice"). We find, however, that appellant adequately alerted the trial court to his objection on hearsay grounds. Thus, we address the merits of the appeal.

In response, the Commonwealth asserts that the exhibit was admissible as a computer-generated document and thus fell outside of the ambit of the hearsay rule. Alternately, the Commonwealth contends that if the exhibit was subject to a hearsay analysis, it fell within the business records exception. Lastly, the Commonwealth asserts that even if the exhibit was improperly admitted into evidence, any error resulting from its admission was harmless beyond a reasonable doubt.

"'The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" Jones v. Commonwealth, 50 Va. App. 437, 446, 650 S.E.2d 859, 863 (2007) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16-17, 371 S.E.2d 838, 842 (1988)). "'Evidence is admissible if it tends to prove a matter that is properly at issue in the case and if its probative value outweighs policy considerations.'" Id. (quoting Blain, 7 Va. App. at 17, 371 S.E.2d at 842).

"'Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.'" Tatum v. Commonwealth, 17 Va. App. 585, 588, 440 S.E.2d 133, 135 (1994) (quoting Stevenson v. Commonwealth, 218 Va. 462, 465, 237 S.E.2d 779, 781 (1977)). "'[H]earsay evidence is inadmissible unless it falls within one of the recognized exceptions to the hearsay rule, and [] the party attempting to introduce a hearsay statement has the burden of showing the statement falls within one of the exceptions.'" McDowell v. Commonwealth, 48 Va. App. 104, 109, 628 S.E.2d 542, 544 (2006) (alterations in original) (quoting Robinson v. Commonwealth, 258 Va. 3, 6, 516 S.E.2d 475, 477 (1999)), aff'd, 273 Va. 431, 641 S.E.2d 507 (2007).

"'Under the modern Shopbook Rule [business records exception], adopted in Virginia, verified regular entries may be admitted into evidence without requiring proof from the regular

observers or record keepers,' generally limiting admission of such evidence to 'facts or events within the personal knowledge of the recorder.'" Kettler & Scott v. Earth Technology Cos., 248 Va. 450, 457, 449 S.E.2d 782, 785 (1994) (quoting "Automatic" Sprinkler Corp. v. Coley & Petersen, Inc., 219 Va. 781, 792, 250 S.E.2d 765, 773 (1979)). "'The trustworthiness or reliability of the records is guaranteed by the regularity of their preparation and the fact that the records are relied upon in the transaction of business by the person or entities for which they are kept.'" Id. at 457, 449 S.E.2d at 786 (quoting "Automatic" Sprinkler Corp., 219 Va. at 793, 250 S.E.2d at 773). "'Admission of such evidence is conditioned, therefore, on proof that the document comes from the proper custodian and that it is a record kept in the ordinary course of business made contemporaneously with the event by persons having the duty to keep a true record.'" Id. (quoting "Automatic" Sprinkler Corp., 219 Va. at 793, 250 S.E.2d at 773).

There is no "person" or declarant, however, where the evidence "is based on computer generated information and not simply the repetition of prior recorded human input or observation."[2] Tatum, 17 Va. App. at 588, 440 S.E.2d at 135. Applying this principle, we held

---

[2] We note that, while the recently approved Virginia Rules of Evidence are not applicable to this case, Rule 2:803 characterizes the business records exception to the hearsay rule as follows:

> A memorandum, report, record, or data compilation, in any form, of acts, events, calculations or conditions, made at or near the time by, or from information transmitted by, *a person* with knowledge in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Virginia Rule of Evidence 2:803(6) (enacted by 2012 Acts chs. 688, 708) (emphasis added). Moreover, Rule 2:801 "limits hearsay to statements made by a 'person,' thus obviating any claim that machines make 'statements' for purposes of the hearsay rule." Charles E. Friend & Kent Sinclair, The Law of Evidence in Virginia § 15-8, at 944 (7th ed. 2012).

in Penny v. Commonwealth, 6 Va. App. 494, 499, 370 S.E.2d 314, 317 (1988), that the report from a "call trap" placed on a telephone was inadmissible in the absence of evidence of the device's reliability. In Penny, this Court reasoned that

> [t]here exists no out-of-court declarant who could be subject to cross-examination. The scientific advances of modern technology have enabled the [caller ID] device to make and record the occurrence of electronic events. No human entered into the [caller ID] device the conclusion that the phone in Penny's residence had completed a contact with the phone in [the victim]'s residence. Therefore, the [caller ID's] reliability does not depend on an out-of-court declarant's veracity or perceptive abilities, and no cross-examination could occur which would enhance the truth-finding process.

Id. at 498, 370 S.E.2d at 317.

Likewise, in the present case, there was no out-of-court asserter upon whom the veracity of the telephone records relied. Witt testified that T-Mobile's telephone records were automatically self-generating and that they were created contemporaneously with the placement or receipt of a telephone call. Thus, it is evident that the records were not created for the purpose of litigation. Although Witt served as a custodian of the records, he played no role in recording or altering what was displayed on the computer results. Rather, Witt indicated that no human was involved in the formation of the records. Accordingly, the admissibility of the telephone records was not governed by hearsay principles, and so we need not consider whether the Commonwealth established all of the elements for the business records exception to apply.[3] See

_____

[3] The Supreme Court, in Kettler & Scott, stated that "[i]n determining the admissibility of computer records, when the argument has been advanced that they are inadmissible hearsay, we have employed the traditional business records exception to the hearsay rule." 248 Va. at 457, 449 S.E.2d at 785 (citing Frye v. Commonwealth, 231 Va. 370, 387, 345 S.E.2d 267, 279 (1986)). In Kettler & Scott, the objection was based on computer records that were at least partially generated by employees. Here, however, the telephone records were solely computer-generated and had no human input. In such cases, we have previously determined that the business records exception is inapplicable. See Chau v. Commonwealth, No. 2613-09-4 (Va. Ct. App. Feb. 1, 2011) (stating, in an unpublished decision, that we look to whether the computer device is reliable for the purposes of determining the admissibility of the computer-generated information).

Bynum v. Commonwealth, 57 Va. App. 487, 491, 704 S.E.2d 131, 133 (2011) (applying Tatum and Penny and noting "[t]his Court has previously recognized that where 'there is no out-of-court asserter,' there can be no hearsay" (citation omitted)); see also Charles E. Friend & Kent Sinclair, The Law of Evidence in Virginia § 15-8, at 944 (7th ed. 2012) ("When a witness seeks to testify as to the witness's observations of a computer display or the readout of other electronic devices, the hearsay objection is often raised. . . . In general, however, the courts have treated such matters as being outside of the ambit of the hearsay rule.").

Reliability is the test for determining the admissibility of relevant records that are generated without human input. See Tatum, 17 Va. App. at 588-89, 440 S.E.2d at 135-36. Therefore, having determined the business records exception is inapplicable to the present case, we consider more broadly whether the telephone records were reliable. Witt confirmed that his primary responsibility as a custodian of records was to produce telephone records in response to subpoena requests. He also stated that the records were kept in the normal course of T-Mobile's business and that the records were relied upon for the performance of work-related functions. Witt testified that the records had been produced by T-Mobile, and they were an accurate telephone record for the number associated with appellant's cellular telephone. Based on the foregoing, the telephone records were sufficiently reliable to warrant their admission into evidence, where they ultimately served to discredit appellant's version of the events on the night of the offense. Therefore, we hold that the trial court did not abuse its discretion in admitting the telephone records into evidence, and accordingly we affirm the trial court's judgment.

Affirmed.